USDC SCAN INDEX SHEET

















JOEH     5/25/06    10:29

3:06-CV-01102   JOHNSON V. RASCOE

*1*

*NTCREM.*



1  TERRY ROSS, CASB No. 58171
   terry.ross@kyl.com
2  STACEY M. GARRETT, CASB No. 155319
   stacey.garrett@kyl.com
3  ELIZABETH A. LOGAN, CASB No. 228880
   elizabeth.logan@kyl.com
4  KEESAL, YOUNG & LOGAN
5  A Professional Corporation
   400 Oceangate, P.O. Box 1730
6  Long Beach, California 90801-1730
7  Telephone:    (562) 436-2000
   Facsimile:    (562) 436-7416
8
9  Attorneys for Defendants
   DAVID HARRISON RASCOE, PRUDENTIAL
10 SECURITIES INC., a corporation (named
   and erroneously sued as PRUDENTIAL
11 SECURITIES, a division of WACHOVIA
   SECURITIES, LLC), PRUDENTIAL EQUITY
12 GROUP, LLC, WACHOVIA SECURITIES LLC,
   PRUDENTIAL INSURANCE CO.
13

FILED

06 MAY 19  PM 2:18

_ , U.S. DISTRICT COURT
_____ OF CALIFORNIA

BY: _____  DEPUTY

14              **UNITED STATES DISTRICT COURT**

15           **SOUTHERN DISTRICT OF CALIFORNIA**

16

17  GLENN DALE JOHNSON,          )  Case No. '06 CV 1102  BEN RBB
                                 )
18                   Plaintiff,  )  **NOTICE OF REMOVAL OF**
                                 )  **CIVIL ACTION PURSUANT TO**
19          vs.                  )  **28 U.S.C. §§ 1441(a) AND (b) AND**
                                 )  **SECURITIES LITIGATION**
20  DAVID HARRISON RASCOE,       )  **UNIFORM STANDARDS ACT OF**
    PRUDENTIAL SECURITIES,       )  **1998 (15 U.S.C. § 78bb(f))**
21  a division of WACHOVIA       )
    SECURITIES, LLC, PRUDENTIAL  )  **[28 U.S.C. § 1441(a) and (b);**
22  SECURITIES INC., a corporation, )  **Securities Litigation Uniform**
    PRUDENTIAL EQUITY GROUP,     )  **Standards Act of 1998 (15 U.S.C.**
23  LLC, WACHOVIA SECURITIES     )  **§ 78bb(f))]**
    LLC, PRUDENTIAL INSURANCE    )
24  CO., and DOES 1-200.         )
                                 )
25                               )
                                 )
26                   Defendants. )
                                 )
27  _____
28

LB1046858                    - 1 -              Case No. _____
NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441(A) AND
(B) AND 15 U.S.C. § 78BB(F)

1  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2         PLEASE TAKE NOTICE that Defendants DAVID HARRISON

3  RASCOE, PRUDENTIAL SECURITIES INC., a corporation (named and

4  erroneously sued as PRUDENTIAL SECURITIES, a division of

5  WACHOVIA SECURITIES, LLC), PRUDENTIAL EQUITY GROUP, LLC,

6  WACHOVIA SECURITIES LLC and PRUDENTIAL INSURANCE CO.

7  ("Defendants") hereby remove this action to the United States District

8  Court for the Southern District of California, pursuant to 28 U.S.C.

9  § 1441(a) and (b) and the Securities Litigation Uniform Standards Act of

10 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(2).

11

12                              **I.**

13            **PLEADINGS AND PROCEEDINGS TO DATE**

14         1.    This action was commenced in the Superior Court of

15 California, County of San Diego, on April 20, 2006, under Case No. GIC

16 864696.

17         2.    None of the Defendants has been served.

18         3.    This Notice of Removal is filed within thirty days of the fil-

19 ing of the Complaint and is therefore timely pursuant to 28 U.S.C.

20 § 1446(b).

21         4.    A true and correct copy of the state court filing, the Com-

22 plaint, is attached as Exhibit "A" to the Request for Judicial Notice filed

23 herewith.

24         5.    The Complaint constitutes all the process, pleadings and

25 orders that Defendants have notice of to date.  In removing this action,

26 Defendants are not waiving service.

27         6.    As this removal is filed by all of the named Defendants,

28 removal is complete as to all Defendants.

LB1046858                        - 2 -              Case No. _____

## II.

## SLUSA REMOVAL

7.     SLUSA prohibits a private party from bringing a "covered class action" in any court, "State or Federal," that alleges a "misrepresenta-tion or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1); see also 15 U.S.C. § 77p(b). SLUSA also makes "[a]ny covered class action brought in any State court involving a covered security. . .removable to the Federal district court for the district in which the action is pending." 15 U.S.C. § 78bb(f); see also 15 U.S.C. § 77p(c).

8.     This Court has original jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78bb(f) (SLUSA), *to wit*:

> (a)     The State Court Action is a "covered class action" as defined by 15 U.S.C. § 78bb(f)(5)(b);
>
> (b)     The securities at issue in this case are "covered securities" within the meaning of 15 U.S.C. § 78bb(f)(5)(E); and
>
> (c)     The State Court Action alleges that Defendants made untrue statements or omissions of material facts in connection with the purchase or sale of securities and that Defendants used or employed manipulative or deceptive devices or contrivances in connection with the purchase or sale of securities, 15 U.S.C. § 78b(f)(1).

## A.     THIS IS A "COVERED CLASS ACTION."

9.     SLUSA defines a "covered class action" as, *inter alia*, any single lawsuit in which:  (1) damages are sought on behalf of more than 50

1  prospective class members or one or more named parties seek to recover

2  damages on a representative basis on behalf of themselves and other

3  unnamed parties similarly situated; and (2) questions of law or fact common

4  to those persons or members of the prospective class predominate over any

5  questions affecting only individual persons or members. See 15 U.S.C.A.

6  § 8bb(f)(5)(B)(i)(I & II).

7        10.   Plaintiff's Complaint establishes that this is a "covered

8  class action" within the meaning of SLUSA.  Plaintiff pleads:

9         (a)   This is a class action brought on behalf of himself and

10             all others similarly situated. (Complaint, ¶ 24,

11             attached as Exhibit A to the Request for Judicial

12             Notice.)

13         (b)   There are 305 proposed class members. (Complaint

14             ¶ 3.)

15         (c)   Plaintiff seeks to recover "damages" on behalf of him-

16             self and others similarly situated. (Complaint, ¶¶ 60,

17             61, 62, 63, 71, 72, 73, 74, 82, 83, 84, 85, 86, 87, 90, 91,

18             97 and prayer.)

19         (d)   Common questions of law or fact predominate over

20             the claims asserted by any one plaintiff.  Plaintiff

21             includes an entire section of the Complaint and

22             details the common questions – twenty-three by his

23             estimation. (Complaint, ¶ 34, §§ A-Z.) These com-

24             mon facts and questions include allegations that:

25           •   Putative class members were sent the same

26              "standard written documents" which allegedly

27              misrepresented the brokerage services

28              Defendants offered. (Complaint, ¶ 15.)

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441(A) AND
(B) AND 15 U.S.C. § 78BB(F)

1          •   A determination of Defendants' liability for the

2              allegedly deceptive statements relating to the

3              marketing and promotion of brokerage services

4              is common to all class members.  (Complaint,

5              ¶ 34 § F.)

6          •   "Whether class members' investment funds

7              were improperly directed towards high commis-

8              sion investments by the defendants" is common

9              to all class members.  (Complaint ¶ 34 § Q.)

10

11   **B.   THE SECURITIES AT ISSUE ARE "COVERED**

12        **SECURITIES."**

13          11.   The securities at issue in this case are "covered securities"

14   within the meaning of 15 U.S.C. § 78bb(f)(5)(E).

15          12.   A "covered security" is defined as a security listed or

16   authorized for listing on the New York Stock Exchange ("NYSE"), the

17   American Stock Exchange ("AMEX"), NASDAQ (or a tier or segment of

18   them) or other exchanges that have listing standards similar to the NYSE,

19   AMEX or NASDAQ, or a security issued by a company registered under the

20   Investment Company Act of 1940.  15 U.S.C. § 78bb(f)(5)(E) (borrowing the

21   definition of "covered security" from section 18(b) of the Securities Act of

22   1933, 15 U.S.C.A. § 77rr(b)(1), (2)).  When a claim concerns a transaction

23   that involves both covered and non-covered securities, the entire claim is

24   subject to removal under SLUSA.  See, e.g., Kenneth Rothschild Trust v.

25   Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1000-1001, n.21 (C.D.

26   Cal. 2002) (allegations relating to mutual fund which was a "covered secu-

27   rity" was sufficient to remove entire claim pursuant to SLUSA); and Lasley

28   ///

1 | v. New England Variable Life Ins. Co., 126 F. Supp. 2d 1236, 1238-39 (N.D.
2 | Cal. 1999).

3 |       13.   Plaintiff's account statements reveal that the retirement
4 | funds at issue were invested in covered securities.  (See, Declaration of Lois
5 | Kallet, ¶ 2-4.)  These securities include, among others, Evergreen Equity
6 | Index Class B, Fidelity Advisor Equity Growth Class B, Fidelity Advisor
7 | Equity Income Class B, Fidelity Advisor Services VII Technology Fund
8 | Class B, all of which were registered investment companies at the relevant
9 | time.  (See, Declaration of Lois Kallet, ¶ ¶ 2-4.)

10 |

11 |     C.    **THE COMPLAINT ALLEGES DEFENDANTS'**
12 |         **MISCONDUCT WAS "IN CONNECTION WITH" THE**
13 |         **PURCHASES AND DECISIONS TO HOLD SECURITIES.**

14 |       14.   The State Court Action alleges that Defendants made
15 | untrue statements or omissions of material facts in connection with the
16 | purchase of securities and that Defendants used or employed manipulative
17 | or deceptive devices or contrivances in connection with the purchase or sale
18 | of securities.  The Supreme Court recently held that in addition to pur-
19 | chases and sales, SLUSA applies where plaintiffs allege they were induced
20 | to hold securities as a result of alleged fraudulent statements, concealment
21 | or omissions of the defendants.  Merrill Lynch, Pierce, Fenner & Smith, Inc.
22 | v. Dabit, ____ U.S. ____, 126 S. Ct. 1503, 1512 (2006).

23 |       15.   Plaintiff's Complaint alleges claims "in connection" with
24 | the purchase and holding of securities within the meaning of SLUSA.
25 | Plaintiff alleges:

26 |         (a)   The class will consist of, "all persons who transferred
27 |            their retirement funds to Prudential in order to
28 |            invest in, purchase, or own securities as a result of

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441(A) AND
(B) AND 15 U.S.C. § 78BB(F)

the solicitation of Rascoe or other agents and repre-
sentatives of Prudential and other Defendants...."
(Complaint, ¶ 24.)

(b)   Based on misrepresentations and omissions in part
regarding asset allocation, Defendant Rascoe caused
Plaintiff to transfer money and invested Plaintiff's
money in high commission investments for his own
gain.  (Complaint, ¶ 8; see also Complaint, ¶ 81.)

(c)   Plaintiff was induced to hold his investments by
Defendants' repeated assurances that the funds were
safe and the asset allocation system was in effect.
(Complaint, ¶ 48.)

(d)   Defendants concealed the truth from Plaintiff to lull
him into a false sense of security.  (Complaint ¶ 50;
see also Complaint, ¶¶ 54-55.)

(e)   Defendants entered into an agreement to accomplish
a fraudulent scheme.  (Complaint, ¶ 59.)

## III.

## VENUE

16.   This is a suit of wholly civil nature brought in a California
court.  The action is pending in San Diego County, California, and accord-
ingly, under Title 28 U.S.C. § 84(d) and 1449(a), the United States District
Court for the Southern District of California is the proper forum for
removal.

///

LB1046858         - 7 -        Case No. _____

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441(A) AND
(B) AND 15 U.S.C. § 78BB(F)

1    WHEREFORE, Defendants pray that the above-referenced

2   action now pending in the San Diego Superior Court, State of California,

3   Case No. GIC 864696, be removed from that Court to this United States

4   District Court.

5

6

7   DATED:  May 19 , 2006                    _Elizabeth Logan_____
                                            TERRY ROSS
8                                           STACEY M. GARRETT
                                            ELIZABETH A. LOGAN
9                                           KEESAL, YOUNG & LOGAN
                                            Attorneys for Defendants
10                                          DAVID HARRISON RASCOE,
                                            PRUDENTIAL SECURITIES INC., a
11                                          corporation (named and erroneously
                                            sued as PRUDENTIAL
12                                          SECURITIES, a division of
                                            WACHOVIA SECURITIES, LLC),
13                                          PRUDENTIAL EQUITY GROUP,
                                            LLC, WACHOVIA SECURITIES
14                                          LLC, PRUDENTIAL INSURANCE
15                                          CO.

16

17

18

19

20

21

22

23

24

25

26

27

28

LB1046858                          - 8 -              Case No. _____
NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441(A) AND
(B) AND 15 U.S.C. § 78BB(F)

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, P.O. Box 1730, Long Beach, California, 90801-1730.

On May 19, 2006, I served the foregoing document described as **NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441(a) AND (b) AND SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998 (15 U.S.C. § 78bb(f)** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Floyd R. Brown, Esq.
Law Offices of Floyd R. Brown
5963 La Place Court, Suite 114
Carlsbad, CA 92008

☑ **BY PERSONAL SERVICE**:  I delivered such envelope(s) by hand to the offices of the addressee(s).

Pursuant to California Rules of Court, Rule 201, and the Local Rules of the United States District Court, I certify that all originals and service copies (including exhibits) of the papers referred to herein were produced and reproduced on paper purchased as recycled, as defined by section 42202 of the Public Resources Code.

Executed on May 19, 2006, at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

David Brandt

```
04/26/06 10:04AM                 CASE ACTIVITY                        Page 1
CM.INQ

Court Number:   S37000       JOHNSON vs RASCOE               ICJudge: SRD
Case Number:    GIC864696    Civil Complaint - General Civil
ID Number:                   Other Civil Complaint
                             Track: 1    Check Date: 06/19/06    Days: 54


Consolidated Case                        Future Event
=====================        ==========================================
No Case                               No Event Scheduled

   Date     Time                              Event
 ========  =======      ==========================================================
 04/20/06  09:43AM   New Filing
                     Civil Complaint
                     Other Civil Complaint
                     Assign to Independent Calendar
                        Judge STEVEN R. DENTON
 04/20/06  09:44AM   Case Assigned to Delay Reduction Program
```

**This printout does not constitute a Register of Actions**

**EXHIBIT A**

1
Floyd R. Brown, Esq. (CSB # 32821)
LAW OFFICES OF FLOYD R. BROWN, P.C.
2
5963 La Place Court, Suite 114
Carlsbad, California 92008
3
Telephone: (760) 438-5998
Facsimile: (760) 438-7587
4

Attorneys for Plaintiff and Class Counsel
5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       IN AND FOR THE COUNTY OF SAN DIEGO

10                                 CENTRAL DISTRICT

11

12   GLENN DALE JOHNSON                    ) Case No.

13                                         ) **CLASS ACTION**

14                    Plaintiff,           ) **COMPLAINT**  GiC 864696

15   v.                                    )

16                                         ) 1.   **Intentional Misrepresentation and**
                                           )      **Fraudulent Concealment and Aiding and**
17   DAVID HARRISON RASCOE,                )      **Abetting;**
     PRUDENTIAL SECURITIES, a division of )
18   WACHOVIA SECURITIES, LLC,            ) 2.   **Breach of Fiduciary Duty, Aiding &**
     PRUDENTIAL SECURITIES INC., a        )      **Abetting;**
19   corporation, PRUDENTIAL EQUITY        )
     GROUP, LLC, WACHOVIA SECURITIES      ) 3.   **Negligent misrepresentations and**
20   LLC, PRUDENTIAL INSURANCE CO., and   )      **omissions; and**
     DOES 1-200.                           )
21                                         ) 4.   **Breach of Contract**

22                                         )
                     Defendants.           )
23   _____)

24

25

26      The Plaintiff Class Representative and Plaintiff Class allege as follows:

27                                 **BACKGROUND**

28   1.    David Harrison Rascoe, "Rascoe", acting as a registered representative of Prudential Securities,

     "Prudential" and the other defendants, induced approximately 305 persons, "THE CLASS", to transfer all or

                                            1

     COMPLAINT

1  substantially all of their retirement funds to Prudential.

2  2.      As a result of Rascoe's inducements, Plaintiff transferred more than $500,000 of his retirement

3  funds to Prudential.

4  3.      Plaintiff is informed and believe that the 305 persons included in the proposed class transferred

5  more than thirty million dollars ($30,000,000.00) to Prudential.

6  4.      Rascoe accomplished this large transfer of funds by the use of material misrepresentations and

7  material omissions.

8  5.      The material misrepresentations made by Rascoe include but are not limited to:

9      A.    Each of the members of the class would be provided with a "complete all service retirement

10          program" including investment managers;

11     B.    Each of the members of the class would be provided with guidance for their investments;

12     C.    Rascoe and the other defendants would put into operation their asset allocation programs and

13          systems to protect the retirement funds of the members of the class by avoiding or

14          minimizing risk;

15     D.    Rascoe would act as the "partner" of each member of the class;

16     E.    The funds delivered as a result of the inducements of Rascoe by Plaintiff and each member

17          of the class would achieve profits according to the projections provided by Rascoe;.

18     F.    Prudential would supervise Rascoe to assure that the promised benefits would be provided

19          including the implementation of asset allocation systems, the monitoring of the asset

20          application systems, reporting on the asset allocation systems and other material facts

21          occurring in regard to the investors retirement funds;

22     G.    Prudential would enforce compliance with its obligations arising out of the material

23          misrepresentations stated as true by Rascoe.

24     H.    Rascoe represented he was:

25          (I)     "a qualified allocation advisor",

26          (ii)    "a respected authority on retirement planning",

27          (iii)   a "senior vice president", and

28          (iv)    a "the Rascoe Retirement Group",

    I.    Rascoe conducted group seminars and represented that:

2

COMPLAINT

5

(I)  "defendants were offering a complete full service asset allocation plan",

(ii)  "Prudential was the 5th largest investment advisor",

(iii)  "Rascoe was the key to the long term success of retirement planning",

(iv)  "Rascoe could be considered a partner of the investors",

(v)  "Rascoe provided a program of asset allocation with automatic re-balancing",

(vi)  "Rascoe would provide for a suitable asset allocation system for the investors".

(vii)  Rascoe was a qualified "Retirement Specialist".

6.  The truth regarding the material misrepresentations is:

A.  The plaintiff and each member of the class were not provided with complete all service retirement programs including investment managers;

B.  Plaintiff and each member of the class not provided with guidance for their investments as promised;

C.  Rascoe and the other defendants did not put into operation their asset allocation programs and systems to protect the retirement funds of the members of the class by avoiding or minimizing risk.

D.  Rascoe and Prudential had no intention of acting as the "partner" and did not act as a partner of Plaintiff and members of the class.  On the contrary, they intended to and did act in their own interests placing themselves ahead of the interests of the plaintiff and each member of the class;

E.  Plaintiffs and each member of the class did not receive profits according to the projections provided by Rascoe;

F.  Rascoe was not being supervised by Prudential or any other defendants to assure compliance with the special duties which arose as a result of Rascoe soliciting the trust of each member of the class and the plaintiff;

G.  The funds of the plaintiff and the members of the class were not placed into asset allocation systems as promised;

H.  Prudential failed to supervise Rascoe and others working under his direction to assure the funds of plaintiff and members of the class were placed into allocated asset systems and monitored to see that they were protected.  They were not so placed and monitored;

3

6

I.    Prudential did not supervise Rascoe to assure that the promised benefits would be provided including the implementation of asset allocation systems. The benefits were not provided;

J.    Prudential did not monitor the asset application systems to see that they were operating in the interests of the plaintiff and each member of the class as promised. They were not so operating. ;

K.    Prudential did not supervise Rascoe as to whether he was complying with his fiduciary duties or acting as the "partner" of Plaintiff and members of the class as promised, utilizing the asset allocation systems and other material facts occurring in regard to the investors retirement funds. Rascoe was not so complying or acting.;

L.    Rascoe and Prudential failed to perform the duties that were key to the long-term success of the retirement program of Plaintiff and members of the class. Rascoe was not a skilled planner and did not serve as a personal guide to all aspects of the Retirement Plans of Plaintiff and the members of the class, and was not a source for vital information;

M.    The representation by Rascoe that he was a qualified allocation advisor, a respected authority on retirement planning, senior vice president and the head of Rascoe Retirement Group was false.

N.    All of the representations were authorized by Prudential and were false, including representations regarding Rascoe's qualifications to conduct group seminars and to represent that:

     (I)      "defendants were offering a complete full service asset allocation plan",

     (ii)      "Prudential was the 5th largest investment advisor",

     (iii)      "Rascoe was the key to the long term success of retirement planning",

     (iv)      "Rascoe could be considered a partner of the investors",

     (v)      "Rascoe provided a program of asset allocation with automatic re-balancing",

     (vi)      "Rascoe would provide for a suitable asset allocation system for the investors".

     (vii)      Rascoe was a qualified "Retirement Specialist".

O.    Prudential granted Rascoe and other Prudential registered representatives the designation "Retirement Specialists". These persons were without proper qualifications and were granted said designation in order to mislead retirees into investing their retirement assets

4

COMPLAINT

with Prudential.

P.    Prudential approved newspaper articles allegedly written by Rascoe which were actually
      written by others.  These articles were intended to mislead retirees as to the qualifications of
      Rascoe as a "Retirement Specialist".

7.    Rascoe and Prudential omitted to tell the truth and fraudulently concealed the facts in order to lull
      the Plaintiffs into a false sense of security to induce them to transfer their retirement funds to
      Prudential and effectively deter a prompt and efficient redress of the legal rights of the Plaintiffs.
      *The concealed facts were:*

A.    Rascoe did not have adequate training to provide the services he represented would be
      provided;

B.    Rascoe had no intention of acting as a "partner" to Plaintiff and each member of the class;

C.    Rascoe would not place the Plaintiff and each member of the class ahead of his own
      interests;

D.    Rascoe was not being supervised by Prudential to assure compliance with the fiduciary duties
      which arose as a result of Rascoe soliciting the trust of Plaintiff and each member of the class
      and also by virtue of applicable laws;

E.    Prudential had no compliance procedures which would either measure the compliance of
      Rascoe and Prudential with representations made by him and them or control failures by
      Rascoe to avoid unsuitable investments of the retirement funds of each member of the class;

F.    Prudential had no process in place to assure that the promised protection and benefits made
      by Rascoe would be provided including the implementation of asset allocation systems, the
      monitoring of the asset application system, the reporting on the asset allocation systems or
      other material facts occurring in regard to the investor's retirement funds;

G.    Rascoe was not a qualified allocation advisor;

H.    Rascoe was not a respected authority on retirement planning;

I.    Rascoe was a senior vice president of Prudential in name only and without any significant
      corporate authority or recognition;

J.    Although Prudential authorized Rascoe to conduct group seminars and represent that Rascoe
      and Prudential and the other defendants were offering a complete full-service asset allocation

5

8

1  plan no such asset allocation plan was implemented;

2  K.   Although Prudential was a large investment advisor it was not performing and did not

3  perform its duties as an investor advisor which included duties to supervise Rascoe, to

4  implement a full-service asset allocation plan in regard to the retiree's such as plaintiff and

5  members of the class who were delivering their retirement funds as a result of Rascoe's

6  statements and promises;

7  L.   Rascoe was not the key to the long-term success of retirement planning for the plaintiff and

8  members of the class because he was not performing the duties which he promised he would

9  perform;

10  M.   Rascoe was not acting as a partner of the Plaintiffs because he was not acting in their interest

11  ahead of his own;

12  N.   Rascoe did not provide an asset allocation program with automatic re-balancing; and

13  O.   Rascoe did not provide a suitable asset allocation for the Plaintiffs.

14  P.   Rascoe was not a qualified "Retirement Specialist".

15  8.   Rascoe failed to perform as promised in establishing the retirement funds into allocated asset

16  accounts which would avoid or minimize risk.  He failed to place the funds of Plaintiff and Plaintiff Class in

17  suitable investments.  He placed the funds transferred by Plaintiff and members of the class in high

18  commission investments for his own gain and that of Prudential and the other defendants in violation of

19  their fiduciary duties.

20  9.   Each of member of the class suffered substantial losses as a result of the defendants' wrongdoing.

21  10.   In a truly strange response to the losses caused by this malfeasance, Rascoe advised the class

22  members that selling their positions would be disloyal and disparage the sacrifice of the United States

23  marines who fought and died to raise the flag on Mt. Suribachi.  To emphasize the point Rascoe sent to

24  Plaintiff and some or all of members of the class a miniature statue representing the well known photograph

25  of the flag raising under battle conditions.  Rascoe did this to conceal the losses Plaintiff and members of

26  the class were experiencing.  Such were the lengths to which defendants went in hiding their tortious

27  conduct.

28  11. Neither Rascoe nor Prudential performed the duties of a fiduciary which they assumed and were

charged with as a matter of law;

6

COMPLAINT

9

12.     If Rascoe, Prudential and the other defendants had properly performed their duties no significant losses would have occurred.  This was a fact these defendants desired to hide and never did voluntarily disclose.

13.     With the knowledge and authorization of Prudential and the other defendants, Rascoe targeted, retirees who needed assistance in managing their retirement funds, and made the material representations and material omissions alleged hereinabove. Prudential and the other defendants permitted, authorized and acquiesced in the actions of Rascoe including making false promises, material misrepresentations and material omissions relative to the services he was qualified to perform, was able to perform or had any intention of performing.

14.     Prudential authorized Rascoe to hold himself out as having experience and expertise which he did not have.  Prudential had no reasonable basis to assume that Rascoe had the experience which he claimed and it authorized him to claim.  Prudential failed to reasonably investigate his experience and expertise.

15.     Rascoe used standard written documents to induce retirees to transfer their funds from others to Prudential and the other defendants.  Rascoe distributed to the plaintiff and members of the class the standard written material describing the services he represented he would perform as well as the services and expertise of Prudential and the other defendants.  This material contains the material misrepresentations and omissions alleged hereinabove.

16.     Rascoe was authorized by the other defendants to make representations to THE CLASS that their funds would be invested in an asset allocation program which would be designed first to provide security and second to provide reasonable income.

17.     Contrary to the promises of Rascoe, Prudential and the other defendants failed to monitor the accounts into which the retirements funds of THE CLASS had been placed.

18.     Prudential and the other defendants prevented the disclosure of the breach of general duties, breach of contract obligations, breach of fiduciary duties, and the material misrepresentations and omissions made by Rascoe and themselves to the class members.  They did this by failing to issue timely, true and accurate reports which set forth the disclosures these defendants were obligated to provide to the plaintiff and the class members.

19.     The defendants and each of them knowingly assisted Prudential in its wrongdoing  and its violations of fiduciary duties all for their own gain.

---

7

20.     Prudential could not have conducted and continued pattern of practice of wrongdoing and violations of obligations, duties and misrepresentations without the assistance of the other defendants.

21.     Rascoe could not have conducted and continued his pattern and practice of wrongdoing and duty violations without the assistance of Prudential and the other defendants.

## JURISDICTION AND VENUE

22.     Jurisdiction and venue are proper in this court because the actions of defendant Rascoe and the other defendants which induced the plaintiff and members of the class to invest all occurred in the city of San Diego which is located in the Central District of the Superior Court for the County of San Diego.

## THE PARTIES
### Plaintiffs

23.     At all times relevant hereto, Plaintiff Glenn Dale Johnson was a resident of the County of San Diego and transferred his retirement funds to the defendants and entered into all of the contracts as a result of inducements made by the defendants within said the city of San Diego.

24.     Plaintiff Glen Johnson as Plaintiff's Representative brings this action on behalf of himself and all others similarly situated as members of the proposed plaintiff class.  The class members which the plaintiff representatives represent are defined as follows:

> "All persons who transferred their retirement funds to Prudential in order to
> invest in, purchase or own securities as a result of the solicitation of Rascoe or
> other agents and representatives of Prudential and the other defendants during
> the time period from January 1, 2000 to December 31, 2004.  Such persons
> were promised by Rascoe, Prudential and the other defendants that they would
> be provided with a special asset allocation system and  supervision the
> activities of Rascoe and other representatives.  Excluded from the plaintiff
> class are defendants and their spouses, any officers or directors thereof,
> together with the legal representatives, heirs, successors or assigns of any
> defendant.  In addition, any pension plan in which the defendants have an

8

COMPLAINT

1      interest are excluded from the plaintiff class but solely to the extent of any

2      defendant's percentage interest in such plan."

3  25.      Glenn Dale Johnson, Plaintiff Class Representative invested approximately $513,000.00 with

4  Prudential through the solicitations of Rascoe made on behalf of Prudential and the other defendants.

**The Plaintiff Class**

6  26.      All class members received standardized written offering materials from Rascoe, Prudential and

7  the other defendants which promoted and solicited the class members to deliver their retirement funds to the

8  defendants and which materials contained promises the defendants would supervise and allocate the assets

9  and funds as alleged herein.  These materials included the material misrepresentations, fraudulent

10  concealment and material omissions set out in the initial paragraphs of this complaint.

11  27.      All members of THE CLASS were provided with the same or similar written materials, including

12  the type attached as (Exhibit "1-1"), "Client's Opening Cash Agreement", a multi-page "Personal Financial

13  Architect"(Exhibit "1-2") , "Securities Agreement: Individual Retirement Account" (Exhibit "1-3"), "The

14  Case for Asset Allocation"(Exhibit "1-4") all of which contain numerous common misrepresentations and

15  omissions of material fact.

16  28.      All members of THE CLASS invested all or a substantial portion of their retirement funds with

17  Prudential through the inducement of Rascoe or other registered representatives and by means of written

18  materials soliciting these activities.

19  29.      All members of THE CLASS signed the same or similar new customer documents.

20  30.      Each member of THE CLASS received standardized communications from Prudential purporting

21  to describe the progress of their investments and the compliance of Rascoe, Prudential and the other

22  defendants with the written and oral promises, representations and statements made to the class members.

23  However, the materials contained misrepresentations, fraudulent concealments and omitted to state that the

24  promised asset allocation system was not implemented and that defendant Roscoe was not being supervised

25  by the defendants in such a way as to assure that it would be performed and to assure that the funds of the

26  members of THE CLASS would not be placed in unsuitable investments.

27  31.      The defendants agreed and were obligated to act as fiduciaries for each of the members of THE

28  CLASS.

9

COMPLAINT

12

32.     This action has been brought and may properly be maintained pursuant to the common law, the principles of equity, the California statutes including the provisions of sections 382 and 1781 of the California Code of Civil Procedure as well as rule 23 of the Federal Rules of Civil Procedure and the decisional law thereunder.

33.     **Numerosity of the Class.** The class members are so numerous that their individual joinder herein is impracticable. Plaintiffs' Representative is informed and believes more than 300 investors lost a total of at least $15 million by investing with Prudential and the other defendants through the solicitation of their agent and registered representative Rascoe.

34.     **The Existence and Predominance of Common Questions of Fact and Law.** Common questions of law and fact exists as to all class members. These questions predominate over the questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

    A.    Whether the class members were given the disclosures required of a fiduciary regarding the failure of Prudential to supervise Rascoe, the failure of Prudential to apply an appropriate system of asset allocation to the retirement funds of THE CLASS, the progress of the investments, the performance of the defendants of the duties which they represented they would perform or were subject to as a matter of law and the supervision of agents by principals;

    B.    Whether defendants made common misrepresentations and fraudulent concealments, common omissions of material facts and made material omissions in communications in soliciting the retirement funds of the class members and in reporting on their servicing with the class members which lulled the Plaintiffs to sleep;

    C.    Whether defendants participated in, and/or pursued the course of conduct complained of herein;

    D.    Whether the documents and statements disseminated to the class members, including but not limited to the attached Exhibits 1-1 through 1-4 by which the alleged financial services and fiduciary obligations were offered to the plaintiffs and the financial reports prepared by the defendants omitted to state and/or misrepresented material facts about the services to be provided by the defendants, the duties assumed by the defendants and the defendant's

10

COMPLAINT

13

conduct with respect to these matters and the assets of the class members.

E.   Whether defendants misrepresented or omitted material facts necessary in order to make the statements made to the class members, in light of circumstances under which they were made, not misleading;

F.   Whether defendants and each of them acted willfully, recklessly and/or with gross or ordinary negligence in omitting to state and/or in misrepresenting material facts or in aiding and abetting the making of such misstatements or conspiring with others to make such misstatements;

G.   Whether defendants breached their fiduciary duties owed to members of the class;

H.   Whether members of the class have sustained damage and if so the proper measure of damages;

I.   Whether defendants' solicitations were targeted to appeal to potential investors who were in need of management of their retirement funds;

M.   Whether investors were told that their retirement funds would be managed under an asset allocation system designed to protect against losses;

N.   Whether class members received misleading and erroneous financial information which attempted to obfuscate or hide the breaches of duty and contract obligations by the defendants;

O.   Whether the defendants' share corresponding joint and several liability;

P.   Whether communications transmitted to all investors by Rascoe and Prudential were misleading or failed to transmit material facts and omitted to transmit facts and circumstances in which they might be misleading;

Q.   Whether class members' investment funds were improperly directed towards high commission investments by the defendants;

R.   Whether activities undertaken by Rascoe and Prudential with the assistance of the other defendants were proper, legal or authorized;

S.   Whether Rascoe with the assistance of the other defendants ever obtained the informed authorization of the class members to deviate from the promised asset allocation system;

T.   Whether defendants wrongfully assisted Prudential in violating fiduciary obligations.

11

COMPLAINT

14

U.     Whether defendants wrongfully assisted Rascoe in violating fiduciary obligations.

V.     Whether defendants assisted Prudential in misleading class members;

W.     Whether defendants acted negligently in failing to use the asset allocation system possessed by reasonably competent broker-dealers and registered representatives in connection with the services they rendered to the class members;

X.     Whether the defendants breached their fiduciary duties to the class members by failing to uncover and disclose to class members the facts alleged herein at ¶¶ 5-8;

Y.     Whether the class members sustained damages as a result of the defendants' wrongdoing and, if so, what the proper measure and appropriate formula would be to ascertain such damages; and

Z.     Whether defendants wrongfully failed to disclose financial and other business records of Rascoe and Prudential and others to the class members.

35.     **Typicality.**  Plaintiff class representative's claims are typical of the claims of the class members since they invested in, purchased and/or owned securities during the time period from August 1, 2000 through December 31, 2004, and have sustained monetary damages proximately caused by the defendants' wrongful conduct.  Plaintiffs' representative suffered damages of not less than $100,000.00 plus interest, all as a result of the conduct alleged herein.

36.     **Adequacy.**  Plaintiffs' Class representative alleges he is an adequate representative of the class because his interests are not in conflict with the interests of the class members they seek to represent.  He has retained counsel competent and experienced in complex class action litigation and they intend to prosecute this action vigorously.

37.     **Superiority.**  The class action is superior to other available methods for the fair and efficient adjudication of the claims of the plaintiff Representative and the class members.  Although the damages suffered by each individual class member may total thousands of dollars, damages of such magnitude are nevertheless relatively small given the burden and expense of individual prosecution of the complex and expensive litigation necessitated by defendants' conduct.  Further it would be virtually impossible for the class members to individually redress effectively the wrongs done to them.  Even if the class members themselves could afford such litigation, the court system could not.  Individualized litigation presented by the complex legal and factual issues in this case increases the delay and expense to all parties, and the court

12

COMPLAINT

system. By contrast, the class action device presents far fewer management difficulties, and provides for the benefits of the single adjudication, economies of sale, and comprehensive supervision by a single court.

38.     In the alternative, this action may be certified as a class action under the provisions of section 382 and 171, California Code of Civil Procedure, or Rule 23 (b) (1). Federal Rules of Civil Procedure because:

A.     The prosecution of separate actions by the individual class members would create a risk of inconsistent or varying adjudication with respect to the individual class members which would establish incompatible standards of conduct for defendants; and

B.     The prosecution of separate actions by the individual class members would create a risk of adjudications with respect to them which would, as a practical matter, the dispositive on the interests of other class members not parties to the adjudication, or substantially impair or impede their ability to protect their interest.

### The Defendants

39.     David Harrison Rascoe, "Rascoe", is an individual who has conducted business under the aegis of the National Association of Securities Dealers and the regulatory requirements imposed upon registered representatives and as an employee of various broker-dealers including defendant Prudential Securities. Rascoe was the point man in contacting plaintiff and Class Members.

40.     Prudential Securities, "Prudential", is a member of the National Association of Securities Dealers and is a broker/dealer.  Plaintiff is informed and believes it is a division of Wachovia Securities, LLC. Prudential hired defendant Rascoe and authorized him to use the designation of registered representative.

41.     Prudential Securities, Inc., is a corporation of unknown origin and participated directly or through its agents in all of the activities alleged herein.  This defendant controlled "Prudential" or aided and abetted its wrongdoing.

.     Prudential Equity Group, LLC, is a corporation of unknown origin and participated directly or ough its agents in all of the activities alleged herein. This defendant controlled "Prudential" or aided and tted its wrongdoing.

Wachovia Securities, LLC, is a corporation of unknown origin and participated directly or igh its agents in all of the activities alleged herein. This defendant controlled "Prudential" or aided and ed its wrongdoing.

INT

44.    Prudential Insurance Co., is a corporation of unknown origin and participated directly or through its agents in all of the activities alleged herein. This defendant controlled "Prudential" or aided and abetted its wrongdoing.

45.    Plaintiff is ignorant of the true names or capacities of defendants sued herein as DOES 1 through 200, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of such Doe defendants when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

## DISCOVERY OF WRONGDOING

46.    Plaintiff and Class Representative and Class Members did not learn, and could not in the exercise of reasonable diligence have learned of the misrepresentations, omissions and truth arising from the wrongful conduct of defendants or the damages suffered until after they severed their relationship with defendants Rascoe and Prudential Securities which occurred within the relevant statute of limitation periods.

47.    As plaintiffs in this matter and other investors were solicited by Rascoe and Prudential to transfer their retirement funds to the account of Prudential allegedly under the guidance and supervision of Rascoe, the investors were repeatedly assured in letters and communications as outlined above that their funds would be placed in asset allocated systems to minimize risk and that they should trust defendants who would act as their "partner".

48.    As losses began to occur in the accounts established for members of the class, the investors were were lulled to sleep when defendants' repeatedly reassured that their funds were safe, that no protective actions should be taken, that the asset allocation system promised was in effect and being monitored.  It was omitted by the defendants to tell members of the class the allocation systems were not in effect and were not being monitored and their funds were invested in unsuitable investments.

49.    The defendants had a continuing duty to disclose and to correct statements that they later learned to be false.  For instance, Prudential failed to mention that it was not implementing an asset allocation system in accordance with representations in that regard communicated to the class members and that the

_____14_____

COMPLAINT

1 representations made as to the services Rascoe and Prudential were performing were not of the value, type,

2 scope, or capability promised and that the promises and statements regarding the subjects were inaccurate

3 and the protection system was nonexistent.

4 50.  Defendants' concealed the truth from the plaintiff and the other investors to lull the investors into a

5 false sense of security and to deter efficient redress of their legal rights.

6

7 **FIRST CAUSE OF ACTION**

8 **Fraudulent Concealment, Aiding and Abetting**

9 **(Against All Defendants)**

10 51.  Plaintiffs hereby incorporated by reference paragraphs 1 through 50 above as though fully set forth

11 herein.

12 52.  The conduct of the defendants in participating in the material misrepresentations and material

13 omissions and the breach of fiduciary and trust duties constituted a fraud against the plaintiff and the class

14 members.

15 53.  At the time said misrepresentations and concealments were undertaken by the defendants, they had a

16 fiduciary duty to the class members including the plaintiff, to disclose the material facts misrepresented and

17 the material facts which were omitted including an ongoing duty to disclose any material adverse events

18 concerning the retirement funds of the plaintiff and the class members.

19 54.  When the defendants, and each of them, made the representations they knew them to be false.  When

20 they permitted or participated in the material omissions they knew that their communications were made

21 false by this action.  These actions were taken by defendants, and each of them, with the intent to defraud

22 and deceive the plaintiff and the class members or were made recklessly, in that the defendants had no belief

23 in the truth of the statements which were made with the intent to induce plaintiffs to act in the manner herein

24 alleged.  In addition, defendants owed the plaintiffs a fiduciary duty to prevent the perpetration of a fraud on

25 investors, and that said defendants actual or constructive notice of the fraud and the intentional reckless

26 and/or negligent failure to disclose the existence of the same to investors constitute constructive as well as

27 actual fraud on their part.

28 55.  When defendants, and each of them failed to disclose the information and suppressed information

they had a duty to the plaintiff and to the class members, defendants knew of the misleading nature of such

15

COMPLAINT

1  omissions, and by these omissions, defendants, and each of them intended to defraud and deceive plaintiffs,

2  and intended to induce plaintiff to act in the manner alleged.

3  56.    Plaintiffs, at all times the misrepresentations and concealments were made by the defendants and at

4  the time plaintiffs took action herein alleged, were ignorant of the facts suppressed or concealed by

5  defendants and believed defendant's statements to be true.

6  57.    Plaintiff and class members reasonably relied upon the material misrepresentations and material

7  omissions of defendants, and were induced to and did place their retirement funds with Prudential as a direct

8  result. Had the plaintiff and class members known the actual facts, plaintiffs would not have taken such

9  action. Reliance of the plaintiff and the class members upon the representations of said defendants was

10  justified, and plaintiffs' investment decisions were substantially influenced thereby.

11  58.    Prudential and the other defendants knew that defendant Rascoe was engaged in fraudulent conduct

12  as aforesaid and that said conduct constituted a breach of duty and a fraud. Notwithstanding this, Prudential

13  and the other defendants engaged in conduct as herein before described which rendered substantial

14  assistance to and abetted of the fraud of Rascoe.

15  59.    With knowledge of the unlawful purpose of defendant Rascoe, Prudential and the other defendants

16  and each of them entered into an agreement to accomplish the aforesaid scheme and by their action assisted

17  with the scheme and result.

18  60.    As a proximate result of the conduct of defendants and each of them as aforesaid, plaintiff and class

19  members were damaged, including, but not limited to, injury to their property and business, loss of principal

20  investment, lost profits, loss of future income, injury to their economic credit, and other general and specific

21  damages, all in an amount to be determined according to proof.

22  61.    As a further proximate result of the aforementioned fraudulent conduct of the defendants, and each of

23  them, plaintiff and class members have suffered, and will suffer in the future, pain, discomfort, fears,

24  anxiety, worry and mental, physical and emotional distress, all to the plaintiffs general damages in an amount

25  to be determined according to proof.

26  62.    Pursuant to California Civil Code section 3287 (a), plaintiff and class members are further entitled to

27  pre-judgment interest as a direct and proximate result of the defendant's' wrongful conduct as hereinabove

28  alleged. The amount of damages suffered by plaintiff as a result of said acts was a sum certain, capable of

calculation under the terms of the subject investments, and plaintiffs are entitled to interest in an amount to

16

COMPLAINT

1  be set forth according to proof based on the terms.

2  63.     The aforementioned acts of the defendants, and each of them, were done maliciously, oppressively

3  and with the intent to defraud, and plaintiffs are entitled to punitive and exemplary damage in an amount to

4  be ascertained according to proof.

5

6                              **SECOND CAUSE OF ACTION**

7                      **Breach of Fiduciary Duty, Aiding and Abetting**

8                                 **(Against All Defendants)**

9  64.     Plaintiffs hereby incorporate by reference paragraphs 1 through 63 as though fully set forth herein.

10  incorporate and repeat each and every allegation of this Complaint as if fully set forth herein.

11  65.     Defendant Rascoe, Prudential and the other defendants acting in the scope and course of their

12  employment, instituted a relationship of trust and confidence with the plaintiff and the class members

13  the defendants had superior knowledge of the transactions to which the retirement funds of the investors

14  were to be put and the defendants had reason to believe that the plaintiffs would rely upon them. These

15  defendants receive compensation for their investment advice in the form of commissions and other

16  consideration. Defendants therefore had a duty to investigate and to disclose all material facts related to these

17  transactions.

18  66.     Defendant failed to investigate, inquire or otherwise attempt to determine whether the promises made

19  were being kept or whether the retirement funds of the class were being invested in asset allegation systems

20  has represented and whether or not Rascoe was leading the plaintiff and class members into unsuitable

21  investments.

22  67.     Defendants, by virtue of their representation of the Class Members and actions on behalf of Class

23  Members owed each Class Member a fiduciary duty of the highest good faith, trust, confidence, integrity,

24  and fair dealing.

25  68.     In their position as fiduciaries, and the position of public trust they held, defendants

26  owed plaintiffs a fiduciary duty to act with the highest degree of care and not to withhold any information

27  that would materially affect the investors decisions to and that , to undertake any conveyance which he

28  impaired the security the investment, or to undertake any actions without express authority.

---

17

COMPLAINT

69.    Rascoe, Prudential and the other defendants owed fiduciary duties to the plaintiff and class members as alleged above and that the conduct alleged breach those duties.  Notwithstanding this, these defendants, and each of them engaged in the conduct herein before described which rendered substantial assistance to and aided and abetted said breach of fiduciary duty by defendant Rascoe, Prudential and Does 1 through 200 and each of them.

70.    With full knowledge and awareness of the above-described fiduciary relationship and duties and of the wrongful conduct by defendant Rascoe, Prudential and the other defendants, defendants and each of them, entered into an agreement to accomplish the aforesaid breaches of duty, and by their actions materially aided and abetted in breaching the fiduciary duties of others.

71.    As a direct and proximate result of the defendant's breach of fiduciary duty and the aiding and abetting of said breach, plaintiff and class members have suffered injuries and damages alleged above, together with interest thereon as provided by law, all in an amount to be determined according to proof at trial.

72.    As a further direct and proximate result of the aforementioned breach of fiduciary duty by defendants, plaintiffs have suffered, and will suffer in the future, pain, discomfort, fears, anxiety, worry, and mental, physical and emotional distress, all to the plaintiffs' general damage in an amount to be determined according to proof.

73.    Pursuant to California Civil Code section 3287 (a), plaintiffs are further entitled to prejudgment interest as a direct and proximate result of the defendant's conduct alleged herein. The amount of damages suffered by the plaintiffs as a result of said acts is a sum certain, capable of calculation under the terms of the subject investments, and plaintiffs are entitled to interest in an amount to be set forth according to proof based on the term share of.   Plaintiff and members of the Class are also entitled to an award of exemplary and punitive damages because defendants are guilty of malice and/or oppressive in that they made the misrepresentations and material omissions knowing that the Plaintiff and members of the class would rely upon them.

74.    The aforementioned acts of the defendants, and each of them, were done maliciously, oppressively and with the intent to defraud, and plaintiffs are entitled to punitive and exemplary damage in an amount to be ascertained according to proof.

18

COMPLAINT

21

## THIRD CAUSE OF ACTION

### Negligent Misrepresentations, Concealment and Omissions

#### (Against all Defendants)

75.    Plaintiff's incorporate by reference paragraphs 1 through 74, inclusive, of this complaint as though fully set forth herein.

76.    The Defendants, and each of them, owe plaintiffs an affirmative duty to act with reasonable diligence to ascertain the true state of affairs and then disclose all necessary and relevant facts to plaintiffs.

77.    The misrepresentations alleged hereinabove at paragraphs 5 through 8 were negligently made by defendants and were careless and without any reasonable ground for asserting them. Defendants, and each of them, knew or should have known the true facts and that the representations made to plaintiffs were false and misleading.

78.    The communications by representation and material omission were misleading because they omitted material facts regarding the actual performance of the promised services by defendants Rascoe and Prudential

79.    The defendant's held themselves out as specialists in the fields investment advisory and portfolio management of the retirement funds of the Plaintiff and the class members  The defendants who so held themselves out must meet the standard of knowledge and skill of such specialists.

80.    The defendant's prepared or permitted the preparation of misleading and false documents. The defendant's knowledge regarding the purpose of these documents establish a duty to those whose conduct has been influenced. The defendants Rascoe and Prudential breached that duty as described herein by among other things failing to disclose material information of which they had knowledge.

81.    Had defendants Rascoe and Prudential performed a reasonable and independent investigation into the facts, plaintiffs allege upon information and belief that it would have revealed among other things that the investors funds were at risk because they were not invested as promised into an asset allocation system which would minimize the investment risk.  An independent investigation would have also revealed that the asset allocation system was not being used, that the funds were being placed in unsuitable investments, that the funds were being placed in investments which would yield the greatest income to the defendants Rascoe and Prudential and that the fiduciary duties of Rascoe and Prudential were being violated by them.

---

COMPLAINT

82.    The proximate result of the negligence of the defendants is that Plaintiff and members of the class have been damaged in an amount to be determined according to proof.

83.    As a proximate result of defendant's' and each of their conduct as aforesaid, plaintiff and class members were damaged, including, but not limited to, injury to their property and business, loss of principal investment, lost profits, loss of future income, injury to their economic credit, and other general and specific damages, all in an amount to be determined according to proof.

84.    As a further proximate result of the aforementioned fraudulent conduct of the defendants, and each of them, plaintiff and class members have suffered, and will suffer in the future, pain, discomfort, fears, anxiety, worry and mental, physical and emotional distress, all to the plaintiffs general damages in an amount to be determined according to proof.

85.    Pursuant to California Civil Code section 3287 (a), plaintiff and class members are further entitled to pre-judgment interest as a direct and proximate result of the defendant's' wrongful conduct as hereinabove alleged. The amount of damages suffered by plaintiff as a result of said actions was a sum certain, capable of calculation under the terms of the subject investments, and plaintiffs are entitled to interest in an amount to be set forth according to proof based on the terms.

86.    Prudential Securities breached its fiduciary duty to the Class Members by the actions alleged herein above and as a direct and proximate result of the foregoing breach of duties, Class Members suffered more than Thirty Million Dollars ($30,000,000.00) in economic damages.

87.    As Members are entitled to exemplary and punitive damages, because these Defendants were guilty of malice and/or oppression in breach of their fiduciary duties.

88.    Defendants knew that Defendant Roscoe was violating his fiduciary obligations to the Class Members by failing and refusing to provide regularly financial reporting on the departures from promised performance of services such as failing to keep the Class Members informed of the progress in the investments and in concealing material facts from the Class Members, making material misrepresentations and omissions to Class Members.

89.    Defendants actively assisted Rascoe and each other in violating fiduciary obligations they owed to the Class Members.

//

20

COMPLAINT

23

90.   As a direct and proximate result of the foregoing breach of duties, Class Members suffered more than Thirty Million Dollars ($30,000,000.00) in economic damages.

91.   The aforementioned acts of the defendants, and each of them, were done maliciously, oppressively and with the intent to defraud, and plaintiffs are entitled to punitive and exemplary damage in an amount to be ascertained according to proof.

## FOURTH CAUSE OF ACTION

### Negligence

### (Against All Defendants)

92.   Plaintiffs incorporate and repeat each and every allegation of this Complaint as if fully set forth herein.

93.   By virtue of the facts and circumstances set forth above, and pursuant to the common law and §§ 1708 and 1714 of the California Civil Code, the Defendants owed a duty to the Class Members to act with due care with respect to each and every act, transaction, decision, representation, omission, and other activity related to the Class Members.

94.   The Defendants breached their duties of due care by, *inter alia*, failing to adequately investigate and supervise Rascoe performance of promised activities, by failing to adequately and accurately advise Paintiff and the Class Members concerning the true status of their investments and the true activities of Prudential Securities in failing to properly supervise Rascoe.

95.   If the Defendants had exercised proper care and skill, the losses suffered by the Class Members would not have occurred.

96.   As a direct and proximate result of the Defendants' negligence, Class Members lost a substantial portion of their investments.

97.   Plaintiff Class Members are entitled to a total recovery of more than Thirty Million Dollars ($30,000,000.00) in economic damages according to proof.

/ / /

/ / /

/ / /

/ / /

---

21

COMPLAINT

1

## FIFTH CAUSE OF ACTION

2

### Breach of Contract

3

#### (Against Prudential Securities)

4   98.   Plaintiff hereby incorporates by reference paragraphs 1 through 97, inclusive of this complaint as

5   though fully set forth herein.

6   99.   On or about August 17, 2000 plaintiff and defendants Rascoe and Prudential entered into a written

7   contract, a copy of the documents composing the contract are attached and marked as Exhibits "1-1" through

8   "1-2" and incorporated by reference

9   100.   Plaintiff has at all-times performed the terms of the contract in the manner specified by the contract.

10   101.   Defendant has failed and refused and continues to refuse to tender performance as required by

11   the contract in that it has not performed its fiduciary duties properly, has made false statements and material

12   omissions,

13   102.   Defendant's failure and refusal to perform its obligations has damaged the plaintiffs in that their

14   retirement funds have been severely mishandled resulting in significant losses which would not have

15   occurred if the defendants had properly perform their contract.

16   103.   Plaintiffs are entitled to damages according to proof.

17

18

## PRAYER

19   WHEREFORE, Plaintiff, individually and on behalf of all Plaintiff Class Members, prays that this

20   Court provide the following relief:

21   A.   For an award of compensatory damages for Plaintiffs' investment losses, or for the benefit of

22   the bargain together with interest thereon at the legal rate, plus additional general and

23   consequential, incidental or special damages according to proof;

24   B.   For an award of exemplary and punitive damages for Defendants' breaches of fiduciary duty,

25   and active assistance in the breaches, in an amount commensurate with each Defendants'

26   ability to pay, according to proof at trial;

27   / / /

28   / / /

22

COMPLAINT

25

1

2     C.     For attorney's fees; and

3     D.     For such other and further legal and equitable relief as the Court may deem just and proper.

4

5 Dated: April 5, 2006                  LAW OFFICE OF FLOYD R. BROWN
                                   A Professional Corporation

6

7

8                        By: _____

9                            Floyd R. Brown
                           Attorney for the Plaintiff and

10                            Plaintiff Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

COMPLAINT

**EXHIBIT** /-.



Securities

**Client's Opening Ca    greement**

Prudential Securities Incorporated
One Seaport Plaza
New York, NY 10292

| Branch | Account No. | FA | Doc. ID |
|--------|-------------|----|---------|
| 7 44 | R 3 2 9 3 8 | 40 | 70 |

*Prudential Securities Incorporated is a subsidiary of The Prudential Insurance Company of America, Newark, New Jersey*

To: Prudential Securities Incorporated and Its affiliates

In consideration of your opening one or more accounts in the name(s) of the undersigned singly, jointly with others or otherwise, now or in the future, the undersigned agrees to the following:

1. I am of full age and represent that, unless I give you written notice to the contrary, I am not and will not be an employee of any exchange or a member firm of any exchange or the NASD, and that no one other than the undersigned who has such affiliation has or will have a direct or indirect interest in any accounts of the undersigned.

2. I agree to conduct my account in accordance with all applicable laws or regulations as well as the rules and practices of any market or clearing house through which my trades may be executed or processed.

3. You may require me to prepay for any order. I agree to pay for all transactions no later than settlement date. You shall have a general lien on all properties I may have on deposit with you either singly or jointly with another or otherwise and may, without notice to me or my successors, at your election, liquidate or transfer any such property in order to satisfy any indebtedness I may have to you or to otherwise you of any risk of a deficit existing in any of my accounts. I shall be liable for any remaining deficiency in any of my accounts. You may conduct all transactions for me in accordance with the customs and usages of securities firms and of the various exchanges.

4. I will advise you if any of my sell orders are for securities which I do not own at the time of the order.

5. You may, at your discretion, decline to accept any orders or deliver out my account or require that I transfer my account from any of your offices. If I do not promptly transfer my account upon your demand, you reserve the right to liquidate positions in my account at your discretion.

6. Unless otherwise agreed in writing, I agree to pay commissions, charges, interest and fees at your prevailing rates which may be changed from time to time without notice to me, and to pay your reasonable attorneys' fees and interest at the highest lawful rate in the event you must take legal action to collect any amounts due from me to you.

7. Confirmation of transactions and statements for my accounts shall be binding upon me if I do not object in writing within ten days after mailing to me. I agree to promptly notify you by a writing addressed to the Branch Manager of the branch in which my account is maintained of any item I believe to be an error or omission in any confirmation or statement. I will so notify the Branch Manager even if an employee of the firm has promised to correct any such error. Communications mailed, wired, or telegraphed to me at the address specified by me shall, until you have received notice in writing from me of a different address, be deemed to have been personally delivered to me and I agree to waive all claims resulting from failure to receive such communication.

8. If any provision or condition in this agreement shall be held to be invalid or unenforceable by any court, regulatory or self-regulatory agency or body, such invalidity or unenforceability shall attach only to such provision or condition. Your failure to insist at any time upon strict compliance with this agreement or with any of its terms or any continued course of such conduct on your part shall not constitute or be considered a waiver by you of any of your rights.

9. This agreement shall inure to the benefit of your successors and assigns, shall be binding on me, my representatives, attorneys-in-fact, administrators, executors and assigns, and beneficial owners and shall be governed by the laws of the State of New York. In the event of my death, any order which I had given you shall be treated as my successor representative until you receive actual notice thereof.

10. Prudential Securities Incorporated client accounts are protected by SIPC and Prudential Securities' excess SIPC coverage. FDIC rules require that clients be informed that Prudential Securities is not a bank and that securities offered through Prudential Securities are not backed or guaranteed by any bank or insured by the FDIC unless otherwise expressly indicated.

11. • Arbitration is final and binding on the parties.

• The parties are waiving their right to seek remedies in court, including the right to jury trial.

• Pre-arbitration discovery is generally more limited than and different from court proceedings.

• The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

• The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

This contract shall be governed by the laws of the State of New York, and shall inure to the benefit of your successors and assigns, and shall be binding on the undersigned, my heirs, executors, representatives, attorneys-in-fact, administrators and assigns. Any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, shall be settled by arbitration before either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. or any other self-regulatory organization of which Prudential Securities Incorporated is a member, as I may elect and under the then existing arbitration procedures of the forum I have elected. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election. Notice preliminary to, in conjunction with, or incident to such arbitration proceeding, may be sent to me by mail and personal service is hereby waived. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof, without notice to me. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

By signing this agreement, the client acknowledges that he/she has received a copy of this agreement.

This agreement contains a pre-dispute arbitration clause in paragraph 11.

X *Mary E. Mescal*                    Mary E. Mariscal                    10-29-99
Client's Signature (Please Sign and Print)                                                    Date

X _____
Client's Signature (If Joint Account) (Please Sign and Print)                                    Date

NEW ACCOUNTS COPY

000079

EXHIBIT  1-1

EXHIBIT  1-2

# PERSONAL FINANCIAL ARCHITECT [SM]

## RETIREMENT PLANNER

Prepared For

Mr. Glenn Johnson

Prepared By

**David Harrison Rascoe**
Senior Vice President - Investments
701 B Street, Suite #1700
San Diego, CA   92101
6195311836

08/17/00

EXHIBIT 1-2

Prudential Securities

30

Dear Glenn Johnson:

This report is a summary of your retirement planning goals. It is divided into the following sections:

**Retirement Planner.** These graphs and spreadsheets illustrate the retirement assets that you will need to finance your retirement goals, based upon your targeted rates of return and the assumption that you will achieve those targets. They also illustrate a projection of the retirement assets that you would accumulate if you save and invest according to the pattern you described to me. The Planner also projects estimates of the asset balances and the retirement income that would be produced by that pattern.

**Personal Profile.** A summary of the information you provided to me for this analysis.

The hypothetical projections in this report have been determined by combining the information that you have provided to me about yourself, your finances, and your retirement goals with basic financial planning principles. These hypothetical projections are provided for informational purposes only. They do not represent any specific investments and are not indicative of past, present, or future performances. You should find this report helpful in your retirement planning efforts and in the pursuit of your investment strategies; however, no attempt to predict the future, financial or otherwise, has ever proven entirely accurate.

Although some of the material in this report is directly based on current tax assumptions, understanding the tax laws requires professional assistance. The importance of professional tax and legal advice cannot be overstated. Since Prudential Securities is not a legal or tax advisor, I strongly urge you to consult your own attorney or tax advisor.

Your Retirement Planner should be used as a general reference and a basis for our continuing discussions. I encourage you to review your goals regularly, especially after major changes in your life

Sincerely,

David Harrison Rascoe
Senior Vice President - Investments

Prudential Securities

Case 3:06-cv-01102-BEN-RBB   Document 1   Filed 05/19/06   Page 41 of 55

# Retirement Planner: Assess Goal

The following evaluation is based on information that you provided to me and is summarized in the Personal Profile at the end of this report. It begins with your current assets and assumes that you will contribute the stated amounts to them annually until you retire and that they will grow at the stated rates of return before and after your retirement. It also considers your stated goals, such as retirement age, income requirements, and years in retirement. These graphs help illustrate whether or not you could achieve your stated retirement goal if you continued to pursue the course of action stated in your Personal Profile. The figure cited below as the amount of "assets you will need at retirement" assumes that your assets will be exhausted at the end of your expected years in retirement.



*Total assets at retirement ($)*



Assets you will need at retirement: $496,901

Assets you are projected to have at retirement: $529,482

Surplus: $32,580

■ The assets you would need to have at your retirement to achieve your stated retirement goals.
▨ The assets you would accumulate by retirement with your stated pattern of saving and investing.

*Annual retirement savings needed (also shown as a percentage of pre-tax income)*



Assets you should be saving annually: $ 0 (0.0% of your gross income)

Assets you expect to save annually: $10,000 (14.3% of your gross income)

Surplus: $10,000 (14.3%)

■ You would need to save this amount every year to reach your stated retirement goals, assuming you can achieve your goal for rate of return.
▨ You said you would save this amount every year for your retirement.

Prudential Securities

# Retirement Planner:
# Estimated Balances

Glenn Johnson
08/17/00
Page 3 of 10

This graph stretches from the present to the end of your expected years in retirement. It illustrates the projected balances of your taxable and tax-deferred retirement savings at the beginning of each year, based on the information that you provided to me about your stated pattern of saving, the rate of return that you expect, and your expected federal, state, and local tax rates. This information is summarized in the Personal Profile at the end of this report. Taxable savings balances, which can include taxable and tax-free savings, are presented net of expected taxes, using only your stated tax rates, although federal tax rates have seen frequent major revisions during recent decades. In retirement, withdrawals are deducted to meet your stated income goals. Withdrawals will first be taken from your tax-deferred accounts to meet any required minimum distributions as well as any requested withdrawals from tax-deferred savings. Any amount still needed will then be withdrawn from your taxable savings accounts. The analysis assumes required minimum distributions from your tax-deferred accounts will begin after you turn 70 1/2.



Under certain circumstances, withdrawals from retirement plans before age 59 1/2 could be subject to a 10% tax penalty. Because this penalty does not always apply, the program did not calculate the tax. You should consult a tax advisor to determine if your situation would warrant a penalty and to discuss planning alternatives.

Prudential Securities

33

# Retirement Planner: Estimated Balances

| Year | Client age | Tax-deferred assets | Taxable assets | Total assets | Additional Savings/Income* | Expenses* |
|---|---|---|---|---|---|---|
| 2000 | 51 | $169,810 | $0 | $169,810 | $0 | $0 |
| 2001 | 52 | $159,482 | $0 | $159,482 | $0 | $0 |
| 2002 | 53 | $321,838 | $0 | $321,838 | $0 | $0 |
| 2003 | 54 | $313,430 | $0 | $313,430 | $0 | $0 |
| 2004 | 55 | $304,181 | $0 | $304,181 | $0 | $0 |
| 2005 | 56 | $494,008 | $0 | $494,008 | $0 | $0 |
| 2006 | 57 | $482,816 | $0 | $482,816 | $0 | $0 |
| 2007 | 58 | $470,506 | $0 | $470,506 | $0 | $0 |
| 2008 | 59 | $456,965 | $0 | $456,965 | $0 | $0 |
| 2009 | 60 | $442,070 | $0 | $442,070 | $6,600 | $0 |
| 2010 | 61 | $432,607 | $0 | $432,607 | $6,600 | $0 |
| 2011 | 62 | $422,198 | $0 | $422,198 | $6,600 | $0 |
| 2012 | 63 | $425,373 | $0 | $425,373 | $6,600 | $0 |
| 2013 | 64 | $408,864 | $0 | $428,864 | $6,600 | $0 |
| 2014 | 65 | $432,705 | $0 | $432,705 | $6,600 | $0 |
| 2015 | 66 | $435,930 | $0 | $436,930 | $6,600 | $0 |
| 2016 | 67 | $491,578 | $0 | $441,578 | $6,600 | $0 |
| 2017 | 68 | $446,690 | $0 | $446,690 | $6,600 | $0 |
| 2018 | 69 | $452,313 | $0 | $452,313 | $6,600 | $0 |
| 2019 | 70 | $458,499 | $0 | $458,499 | $6,600 | $0 |
| 2020 | 71 | $465,303 | $0 | $465,303 | $6,600 | $0 |
| 2021 | 72 | $472,788 | $0 | $472,788 | $6,600 | $0 |
| 2022 | 73 | $481,021 | $0 | $481,021 | $6,600 | $0 |
| 2023 | 74 | $490,078 | $0 | $490,078 | $6,600 | $0 |
| 2024 | 75 | $500,040 | $0 | $500,040 | $6,600 | $0 |
| 2025 | 76 | $508,069 | $2,039 | $510,178 | $6,600 | $0 |
| 2026 | 77 | $514,117 | $5,358 | $520,475 | $6,600 | $0 |
| 2027 | 78 | $517,385 | $13,252 | $530,737 | $6,600 | $0 |
| 2028 | 79 | $517,591 | $23,044 | $540,975 | $6,600 | $0 |
| 2029 | 80 | $515,603 | $35,685 | $551,089 | $6,600 | $0 |
| 2030 | 81 | $510,042 | $51,099 | $551,141 | $6,600 | $0 |
| 2031 | 82 | $500,941 | $69,933 | $570,874 | $6,600 | $0 |
| 2032 | - | $448,489 | $91,889 | $510,378 | $6,600 | $0 |

*Based on information that you provided to us. Additional savings, income and expenses are included in or deducted from the asset balances for the following year.

## Retirement Planner:
## Forecast Income (after taxes)

Glenn Johnson
08/17/00
Page 5 of 10

This graph stretches from the present to the end of your expected years in retirement. It compares your income goals and your expected replacement income during retirement, both after taxes. Note that we have used only your stated tax rates, although federal tax rates have seen frequent major revisions during recent decades. Income is broken down among Social Security retirement benefits, pension(s), savings withdrawn, and other income. Your annual income goal is increased to keep pace with expected inflation. Your estimated income is based on the information that you provided to me, including retirement age, income goals, expected inflation rate, and expected length of retirement. The calculations display the effects of those assumptions.



Under certain circumstances, withdrawals from retirement plans before age 59 1/2 could be subject to a 10% tax penalty. Because this penalty does not always apply, the program did not calculate the tax. You should consult a tax advisor to determine if your situation would warrant a penalty and to discuss planning alternatives.

# Retirement Planner:
## Forecast Income (after taxes)

Glenn Johnson
08/17/00
Page 6 of 10

| Year | Client Age | Savings Withdrawn | Other Income | Pension | Social Security | Total Income | Income Goal | Shortfall/Surplus |
|---|---|---|---|---|---|---|---|---|
| 2001 | 52 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2002 | 53 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2003 | 54 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2004 | 55 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2005 | 56 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2006 | 57 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2007 | 58 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2008 | 59 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2009 | 60 | $42,000 | $0 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2010 | 61 | $37,202 | $4,798 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2011 | 62 | $37,065 | $4,798 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2012 | 63 | $37,065 | $4,798 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2013 | 64 | $37,065 | $4,798 | $0 | $0 | $42,000 | $42,000 | $0 |
| 2014 | 65 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2015 | 66 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2016 | 67 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2017 | 68 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2018 | 69 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2019 | 70 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2020 | 71 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2021 | 72 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2022 | 73 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2023 | 74 | $27,065 | $4,798 | $0 | $10,137 | $42,000 | $42,000 | $0 |
| 2024 | 75 | $29,082 | $4,798 | $0 | $10,137 | $44,017 | $41,000 | $3,017 |
| 2025 | 76 | $31,040 | $4,798 | $0 | $10,137 | $45,976 | $41,000 | $3,975 |
| 2026 | 77 | $33,372 | $4,798 | $0 | $10,137 | $48,307 | $42,000 | $6,307 |
| 2027 | 78 | $35,485 | $4,798 | $0 | $10,137 | $50,420 | $42,000 | $8,420 |
| 2028 | 79 | $37,654 | $4,798 | $0 | $10,137 | $52,589 | $41,000 | $11,589 |
| 2029 | 80 | $39,442 | $4,798 | $0 | $10,137 | $54,377 | $42,000 | $12,377 |
| 2030 | 81 | $41,663 | $4,798 | $0 | $10,137 | $56,598 | $42,000 | $14,598 |
| 2031 | 82 | $43,355 | $4,798 | $0 | $10,137 | $58,290 | $42,000 | $16,290 |

Prudential Securities

36

Glenn Johnson
08/17/00
Page 7 of 10

## Personal Profile

This is a summary of the information that you have provided for me about yourself, your finances, and your retirement goals.

**General Data:**                          Glenn
Date of birth:                             10/06/48
Retirement age:                            52
Years in retirement:                       31

Current average Federal tax rate:                         20.8%
Current marginal Federal tax rate:                        n/a
Federal tax rate in-retirement:                           20.8%
Current average state tax rate:                           6.5%
State tax rate in-retirement:                             6.5%
Total Income:                                             $77,514
Total Federal tax paid:                                   $16,111
Total state tax paid:                                     $5,033

Estimated inflation rate:                                 0.0%

**Income Data:**                          Glenn
Current annual salary:                     $70,000
Other annual compensation:                 $0
Salary/other comp. rate of increase:       0.0%

Annual current income goal(pre-tax dollars):             $57,772
Annual current income goal(after-tax dollars):           $42,000
Annual second income goal(pre-tax dollars):              n/a
Annual second income goal(after-tax dollars):            n/a
    At client's age:                             n/a
Survivor income need (%):                                 50.0%

Annual projected pension:                  $0
Age pension will begin:                    52
Death benefit for surviving spouse:        50.0%
Reflected in today's dollars:              Yes
Adjusted for inflation:                    No

Social Security benefit:                   $13,200
Benefit start age:                         62
Average salary before retirement:          n/a
Actual retirement age:                     52
Percent of benefits subject to tax:                      85.0%
Rate of increase of benefits:                            0.0%

Prudential Securities

## Personal Profile

**Other Significant Cash Flows:**

| Source | Age | Amount | # Years | Indexed for inflation? | Pre-tax? |
|---|---|---|---|---|---|
| 1. Military Retirement | 60 | $6,600 | 40 | Yes | Yes |
| 2. Inheritance | | | 1 | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

**Other Significant Expenses:**

| Source | Age | Amount | # Years | Indexed for inflation? |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

## Personal Profile

### Savings Data

**Tax-Deferred Savings:**

| | |
|---|---|
| Tax-Deferred savings balance: | $469,810 |
| Annual contribution: | $10,000 |
| | |
| Pre-retirement assumed rate of return:* | 10.0% |
| In-retirement assumed rate of return:* | 10.0% |
| | |
| Primary investment objective: | n/a |
| Risk tolerance: | n/a |

| | |
|---|---|
| **IRA:** | |
| IRA balance: | $0 |
| Tax-deductible contribution: | $0 |
| Non-deductible contribution: | $0 |
| Total non-deductible contributions: | $0 |
| **Roth IRA:** | |
| Roth IRA balance: | $0 |
| Non-deductible contribution: | $0 |
| **401(k):** | |
| 401(k) pre-tax balance: | $218,000 |
| Pre-tax contribution: | $10,000 |
| Employer contribution: | $2,100 |
| 401(k) after-tax balance: | $0 |
| After-tax contribution: | $0 |
| Total after-tax contributions: | $0 |
| **403(b):** | |
| 403(b) balance: | $0 |
| Annual contribution: | $0 |
| **Defined Contribution Plan (Keogh):** | |
| Defined Contribution Plan balance: | $251,810 |
| Annual contribution: | $0 |
| **ESOP:** | |
| ESOP balance: | $0 |
| Employer contribution: | $0 |
| **SIMPLE:** | |
| SIMPLE balance: | $0 |
| Annual salary deferral: | $0 |
| Employer match: | yes |
| Employer non-elective contribution: | no |
| Annual employer match/contribution: | 3.0% |

Prudential Securities

Glenn Johnson
08/17/00
Page 10 of 10

## Personal Profile

**OTHER:**

| | |
|---|---|
| Balance: | $0 |
| Pre-tax contribution: | $0 |
| After-tax contribution: | $0 |
| Total after-tax contributions: | $0 |
| Include Other tax-deferred savings balance(s) into RMD calculations? | Yes |

**Retirement Distributions:**

| | |
|---|---|
| Desired distribution amount: | $0 |
| Begin age: | 70 |

**Taxable Savings (Includes taxable and tax-free savings):**

| | |
|---|---|
| Total taxable savings balance: | $0 |
| Annual contribution: | $0 |
| Pre-retirement assumed rate of return:* | 10.0% |
| In-retirement assumed rate of return:* | 10.0% |
| Primary investment objective: | n/a |
| Risk tolerance: | |

**Taxable Savings:**

| Asset Class: | Current Balance | Expected Rate of Return |
|---|---|---|
| Cash and Cash Equivalents | $0 | 0.0% |
| Intermediate Fixed Income | $0 | 0.0% |
| Long-Term Fixed Income | $0 | |
| International Fixed Income | | |
| Large Capitalization Stocks | $0 | 0.0% |
| Small Capitalization Stocks | $0 | 0.0% |
| International Stocks | $0 | |

**Tax-Free Savings:**

| Asset Class: | Current Balance | Expected Tax Free Return | Taxable Equivalent Return |
|---|---|---|---|
| Cash and Cash Equivalents | $0 | 0.0% | n/a |
| Intermediate Fixed Income | $0 | 0.0% | n/a |
| Long-Term Fixed Income | $0 | 0.0% | n/a |

Amount to preserve:     $0
* These figures are major components in your retirement planner.

# SECURITIES AGREEMENT
## Individual Retirement Account

Prudential Securities C/F
Mr Russell C Ortman Jr
IRA Rollover DTD 05/07/01
10335 Limetree Ln
Spring Valley   CA 91977-5415

**Account Number**   TJU R56331 BJ
TIN # 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

Package Number:   0J066 XXX 017811

This agreement describes certain terms and conditions which govern my Prudential Securities Incorporated ("PSI") Individual Retirement Account ("IRA"). I agree to comply with these terms and conditions.

1. Unless I give you written notice to the contrary, I, the beneficial owner of the IRA, am not and will not be an employee of any exchange or a member firm of any exchange or the NASD. I, the beneficial owner of the IRA, am the only person who has an interest in this account.

2. This agreement, along with the Prudential Securities Individual Retirement Account Custodial Agreement (the "Custodial Agreement"), will remain in effect for the life of the IRA and contains our entire understanding. I may instruct PSI to close my IRA at any time, and I understand I will be responsible for all fees, prior transactions, transactions outstanding as of the time PSI receives my instruction to close my IRA, as well as for all subsequent deliveries of the assets of my IRA. In the event of my death, any order I gave PSI prior to my death is binding on my IRA unless PSI receives actual notice of my death before the order is executed.

3. My IRA shall pay for all transactions no later than 1:00 p.m. (E.T.) on the settlement date. PSI may require my IRA to prepay for any order. PSI shall have a general lien on my IRA and on all other money, securities or other property ("property") I may have on deposit with PSI or in which I have an interest, such as a joint account. PSI may, without notice to me and at its discretion, liquidate or transfer any such property in order to satisfy any indebtedness my IRA may have to PSI or to relieve PSI of any risk of a deficit existing in my IRA. I shall be liable for any remaining deficiency in my IRA.

4. I agree to conduct my IRA in accordance with all applicable laws or regulations as well as the rules and practices of any market or clearing house through which trades in my IRA may be executed or processed. PSI may conduct all transactions for my IRA in accordance with the customs and usages of securities firms and of the various exchanges. PSI's failure to comply with any rule or regulation which is not otherwise a breach of this agreement shall not relieve my IRA of its obligations under this agreement.

5. PSI may, at its discretion, decline to accept any order from me. PSI may require that I transfer my IRA from PSI. I understand that if I fail to do so, PSI reserves the right to buy, transfer and deliver amounts to me under the circumstances set forth in Article VIII, Section 3 of the Custodial Agreement.

6. My IRA shall pay commissions, charges and fees at PSI's prevailing rates, which may change without notice to me except as otherwise provided by law. My IRA shall pay PSI's reasonable attorneys' fees and interest at the highest lawful rate in the event PSI takes legal action to collect any amount due from my IRA to PSI. A quarterly Abandoned Account Safekeeping Fee of $25 will be charged if account statements and other correspondence mailed to us are returned by the Postal Service as undeliverable, and PSI is unable to locate us through reasonable efforts. These fees are not refundable.

7. PSI will send all written communications relating to my IRA to the mailing address I have given PSI. I acknowledge that if I have a new address I must advise PSI of that address. I understand that all communications sent to the address I have given PSI are deemed to be personally delivered to me for my IRA. I agree that neither I nor my IRA will have any claim against PSI based on my failure to receive any communication.

8. All reports of the execution of orders (confirmations) and account statements are binding on me and my IRA unless I object in writing ten days after mailing to me, for my IRA. I understand that I must advise the Branch Manager at the branch where my IRA is held, in writing, if I think there is an error or omission in any communication, even if an employee of PSI agrees to correct the error or omission. I understand that, notwithstanding the price at which the execution of an order was reported to me, for my IRA, the actual execution price if binding upon me and my IRA.

9. If a court, regulatory agency or self-regulatory organization determines that a provision of this agreement is invalid or unenforceable, that decision will apply only to that provision; the rest of the agreement remains in effect. PSI does not waive any of its rights under this agreement, even if it does not insist at all times on strict compliance with all the agreement. No part of this agreement can be changed unless it is agreed to by me and an officer of PSI in writing.

10. Prudential Securities Incorporated client accounts are protected by SIPC and PSI's excess insurance coverage.

11. This agreement is to be governed by the laws of the State of New York and may be used for the benefit of PSI's successors or assigns. My IRA, as well as my and my IRA's representatives (which can include my heirs, executors, administrators, assigns or attorney-in-fact) are bound by the terms of this agreement.

*Agreement Continues on Page 2.*

*Please remember to sign this agreement and confirm or provide your tax identification number, if applicable, on the signature page.*

Client Document

This is page 1 of 4.

PRUORT00754

EXHIBIT  1-3

EXHIBIT 1-4

# San Diego Daily Transcript

ESTABLISHED 1886   VOL. 113, NO. 129   MONDAY, JUNE 30, 1997   2131 THIRD AVENUE 619/232-4381

# Portfolio Asset Allocation

SOURCE: D. Harrison Rascoe

Individual investors tend to build their portfolios with whatever is handy — stock in the company you work for, hot tips from friends or a bond with an interest rate that seemed too good to resist. A little here, a little there with no organized plan.

Unfortunately, not only does this often result in an unbalanced portfolio, but also one that does not maximize value and possibly even exposes an investor to inordinate risk. What most investors want and need is a portfolio in which the assets are allocated among a range of investments, each carefully selected to help meet financial goals. A qualified adviser can help build a balanced portfolio, but each investor should understand the basic elements.

One easy way to visualize asset allocation is as a pyramid divided into three layers, with each layer decreasing in size from bottom to top. This illustrates the practical idea that you should first establish a relatively large foundation of secure, low-risk investments and then move up, layer by layer, to potentially more rewarding (and also riskier) growth-oriented and tax-advantaged investments. The peak of the pyramid is reserved for the most speculative investments, consisting of "play money" that an investor can afford to lose.

The bottom (and largest) layer of the pyramid should establish a safe, broad investment base and is made up of cash equivalents — bank accounts, CDs, money market funds — as well as investments such as your IRA and insurance, which meet special financial needs. Think of this layer as an investment foundation upon which to build.

The second-largest layer consists of more income and growth-oriented, as well as tax-advantaged investments. This layer includes such fixed-income investments as corporate and municipal bonds, zero coupon bonds and utility company stocks. Most of these investments also are liquid, meaning that they can be converted to cash easily and quickly. However, because yields and market values will fluctuate, your investment may be worth more or less than its original cost when converting to cash.

Moving up the pyramid in terms of risk, the top (and smallest) layer consists of growth stocks, aggressive growth-oriented mutual funds and other growth vehicles. The objective of these types of investments is capital appreciation or "wealth building," not mainly income. Each of the investments in this top layer is subject to market fluctuations and offers no guarantee of income or increase in value. A growth company, for example, may have above-average per-share sales and earnings growth, pays little or no dividend and carries a large amount of debt. If the company appears to have a strong position in its industry and good prospects, an investor's stake in the company could substantially increase over time. The investment pyramid described above is only a basic model of asset allocation. The levels at which you invest and the amount invested at each level will depend on available assets and objectives. For example, a young family that needs more income is likely to concentrate most of its assets in the second level, while a successful single person may devote more funds to the top level to build greater wealth.

Another key issue in determining asset allocation is the number of years an investor has until retirement. A young executive will look for long-term growth, while a man in his 60s will be moving investments into more stable income-oriented options. Most financial advisers have access to sophisticated allocation models that are constantly updated to changing market conditions. These models provide guidelines for how much money you should keep in cash, stocks, bonds and other investment alternatives within each category to help build a tailored portfolio that is right for you.

Submitted by D. Harrison Rascoe. D. Harrison Rascoe is an associate vice president-investments at Prudential Securities, 1-800-423-6435.

EXHIBIT 1-4

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, P.O. Box 1730, Long Beach, California, 90801-1730.

On May 19, 2006, I served the foregoing document described as **REQUEST FOR JUDICIAL NOTICE [Federal Rule of Evidence 201(d); 28 U.S.C. § Securities Litigation Uniform Standards Act of 1998 (15 U.S.C. § 78bb(f)]** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Floyd R. Brown, Esq.
Law Offices of Floyd R. Brown
5963 La Place Court, Suite 114
Carlsbad, CA 92008

☒ **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the offices of the addressee(s).

Pursuant to California Rules of Court, Rule 201, and the Local Rules of the United States District Court, I certify that all originals and service copies (including exhibits) of the papers referred to herein were produced and reproduced on paper purchased as recycled, as defined by section 42202 of the Public Resources Code.

Executed on May 19, 2006, at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

David Brandt

JS 44
Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS
GLENN DALE JOHNSON

06 CV 1102   BEN RBB

**DEFENDANTS**
DAVID HARRISON RASCOE, PRUDENTIAL SECURITIES, a division
of WACHOVIA SECURITIES, LLC, PRUDENTIAL SECURITIES INC.,
a corporation, PRUDENTIAL EQUITY GROUP, LLC, WACHOVIA
SECURITIES LLC, PRUDENTIAL INSURANCE CO.

FILED
06 MAY 19 PM 2:27

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
FLOYD R. BROWN
LAW OFFICES OF FLOYD R. BROWN
5963 LAPLACE COURT, SUITE 114
CARLSBAD, CA 92008
(760) 438-5998

ATTORNEYS (IF KNOWN)
TERRY ROSS/STACEY GARRETT/ELIZABETH LOGAN
KEESAL, YOUNG & LOGAN
400 OCEANGATE - P.O. BOX 1730
LONG BEACH, CA 90801-1730
(562) 436-2000

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)  Defs remove this matter from St. court under 15 U.S.C., 78bb(f).
Plf's rep claims include causes of action for intentional/negligent misrepresentation/omission, fraudulent conceal-
ment, aiding & abetting, breach of fiduciary duty, & breach of contract involving securities retirement accounts.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Medical Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motion to Vacate Sentence
**HABEAS CORPUS:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reappointment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☒ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
☐ 1 Original Proceeding
☒ 2 Removal from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  Docket Number _____

DATE
MAY 19, 2006

SIGNATURE OF ATTORNEY OF RECORD
*Elizabeth Logan*

#125207   $3ア   /ケ0  5/19/06

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)